**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith Alice Venezia,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-22-00961-PHX-DGC<br><br>**ORDER** |

Plaintiff Judith Venezia seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which partially denied her claim for disability insurance benefits. For reasons stated below, the Court will affirm the decision.

**I.  Background.**

Plaintiff was born November 18, 1964 and was 50 years old at the time of her alleged disability date of October 9, 2015. Administrative Transcript ("Tr.") 16, 124, 391. She has a college education and previously worked as a nurse. Tr. 36, 88-90, 756. She filed her social security claim in October 2016, alleging that she could no longer work due to back pain, migraine headaches, and several mental health conditions. Tr. 125, 391-94.

The claim was denied by state agency physicians at the initial and reconsideration levels. Tr. 124-67. After a hearing, the Administrative Law Judge ("ALJ") issued a partially favorable decision on March 16, 2020. Tr. 168-203. On August 13, 2020, the Appeals Council remanded for further proceedings. Tr. 204-08.

Plaintiff and a vocational expert testified at a hearing before the ALJ on March 9, 2021. Tr. 54-67. The ALJ issued another partially favorable decision on March 30, 2021, finding Plaintiff disabled on November 17, 2019, but not before. Tr. 10-50. This became the Commissioner's final decision when the Appeals Council denied review on April 8, 2022. Tr. 1-6

Plaintiff then commenced this action for judicial review. Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 13, 16, 18, 19. Because the ALJ's decision is free from harmful legal error and supported by substantial evidence, the Court will affirm it.

## II. Standard of Review.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may vacate the decision only if it is based on legal error or is not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports the ALJ's decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

The ALJ is responsible for determining credibility and resolving conflicts in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). And where "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755; *see Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

### III. Disability and the Five-Step Evaluation Process.

Under the Social Security Act, a claimant is disabled if she cannot engage substantial gainful activity because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Whether the claimant is disabled is determined by a five-step process. The claimant must show that (1) she has not engaged in substantial gainful activity since the alleged disability date, (2) she has a severe impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") – the most she can do with her impairments – precludes her from performing past work. If the claimant meets her burden at step three, she is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets her burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[1]

Plaintiff has met her burden at steps one and two – she has not engaged in substantial gainful activity since the alleged disability date and has multiple severe impairments: lumbar and cervical joint disease, post-laminectomy syndrome, right hand osteoarthritis, idiopathic peripheral neuropathy, bilateral hip osteoarthritis, bipolar disorder with depression, attention deficit hyperactivity disorder ("ADHD"), and anxiety disorder. Tr. 18-19.[2] The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 20-22. Plaintiff does not challenge this finding.

---

[1] An impairment or combination of impairments is "severe" if it significantly limits the ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities – the abilities and aptitudes necessary to do most jobs – include physical functions such as sitting, standing, walking, lifting, carrying, reaching, and handling; capacities for seeing, hearing, and speaking; understanding, remembering, and carrying out instructions; use of judgment; responding appropriately to coworkers and supervision; and dealing with changes in a work setting. 20 C.F.R. § 404.1522(c).

[2] Plaintiff has some non-severe impairments that would have no more than a minimal effect on her ability to work. Tr. 19-20; *see* 20 C.F.R. §§ 404.1522. The ALJ considered those impairments in determining Plaintiff's RFC at step four. Tr. 20.

3

The ALJ determined at step four that Plaintiff has the following RFC:

> [S]ince October 9, 2015, the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant must alternate positions every 30 minutes for 3-4 minutes while remaining at the workstation.  In addition, she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently handle and finger bilaterally.  She must avoid hazards, including moving machinery and unprotected heights.  She is able to perform simple, routine tasks and make simple work-related decisions; and she can have occasional interaction with coworkers and the public.

Tr. 23.[3]  The ALJ found that this RFC precluded Plaintiff from performing her past work as a nurse, but that she was able to perform a range of light work with certain restrictions until she reached the advanced age of 55 on November 17, 2019. Tr. 23-38.[4]

Based on Plaintiff's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ found at step five that there were a significant number of unskilled jobs Plaintiff could perform before November 17, 2019, including marker, order caller, and electrical accessories assembler. Tr. 38-39.  The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act before November 17, 2019, but that she became disabled on that date due to her advanced age and other vocational factors. Tr. 39 (citing Medical-Vocational Rule 202.06).[5]

---

[3] To determine the physical exertion requirements of work in the national economy, the Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 CFR §§ 404.1567(b).

[4] The Medical-Vocational Guidelines have three age categories: (1) younger person (under 50); (2) person closely approaching advanced age (50-54); and (3) person of advanced age (55 or older).  20 C.F.R. § 404.1563(c)-(e).  Advanced age "significantly affects a person's ability to adjust to other work." *Id.* § 404.1563(e).

[5] Under Rule 202.06, commonly known as the "grids," a person limited to light work is disabled where she is of advanced age, has a high school or greater education that does not provide for direct entry into skilled work, and has skilled or semi-skilled past relevant work from which no skills are transferrable to other jobs the person can perform. 20 C.F.R. Part 404, Subpart P, Appendix 2; *see Cook v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01027-PHX-ESW, 2022 WL 17249102, at *4 n.3 (D. Ariz. Nov. 28, 2022).

**IV.   Discussion.**

Plaintiff's challenge to the ALJ's decision concerns only the period from October 9, 2015, the alleged disability date, through November 16, 2019, the day before the established disability date. Doc. 16 at 2. Plaintiff contends that the ALJ erred by (1) failing to consider the 2017 opinion of treating psychiatrist Dr. Gary Grove, (2) relying on the opinion of examining psychologist Dr. Beverly Yoches, and (3) rejecting opinions of Dr. Grove, Dr. Anthony Yeung (back surgeon), and Dr. Linda Eller (primary care physician). *Id.* at 1, 16-24.[6] Defendant argues that the ALJ's decision is not based on harmful legal error and is supported by substantial evidence. Doc. 18 at 4-12.

    **A.   Medical Opinion Evidence.**

The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments[.]" 20 C.F.R. § 404.1527(a)(1). The ALJ must consider every relevant medical opinion in the record. 20 C.F.R. § 404.1527(b)-(c); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Under the applicable regulations, the ALJ generally should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. 20 C.F.R. § 404.1527(c); *see Andrews*, 53 F.3d at 1040-41. Where there are conflicting medical opinions, as in this case, the ALJ may reject a treating or examining physician's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record[.]" *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

"Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings." *Lisa L. v. Kijakazi*, No. 1:20-CV-494-SI, 2021 WL 3663068, at *8 (D. Or.

---

[6] Plaintiff does not challenge the ALJ's finding that her statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 24.

Aug. 18, 2021) (citations omitted). The ALJ can meet "the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)); *see Magallanes*, 881 F.2d at 751.[7]

### B. Dr. Grove.

Dr. Grove treated Plaintiff for her mental health conditions during the relevant period. *See* Doc. 16 at 9; Tr. 704-08, 797, 1189-97, 1668. He completed check-box forms regarding Plaintiff's mental RFC in October 2016, May 2017, June 2018, and April 2020. Tr. 496-97, 621-22, 878-79, 1876-77. While the ALJ gave little weight to the opinions expressed in the 2016, 2018, and 2020 forms, she failed to consider the 2017 form. *See* Tr. 31-33. This failure constitutes legal error. *See* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); *id.* § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); *Mardikian v. Comm'r of Soc. Sec.*, No. 1:17-CV-00181-JDP, 2018 WL 4677454, at *4 (E.D. Cal. Sept. 28, 2018) ("The ALJ had an obligation to consider every medical opinion, *see* 20 C.F.R. § 404.1527(b) . . . . Ignoring [Dr.] Myat's opinion was legal error.") (citing *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)).

Defendant argues that the error is harmless because the opinions Dr. Groves provided in the 2017 form are substantially the same as those expressed in the other three forms he completed, and the ALJ's valid reasons for giving little weight to those opinions apply equally to the 2017 form. Doc. 18 at 5-6. The Court agrees.

---

[7] In 2017, the Commissioner revised the regulations to eliminate the hierarchy of medical opinions. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, which apply to claims filed after March 26, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion[.]" 20 C.F.R. § 404.1520c(a). These new regulations do not apply here because Plaintiff filed her claim in 2016. *See* Tr. 391-94; Doc. 16 n.18.

Dr. Grove indicated in the 2017 form that Plaintiff had: (1) marked limitations (11-15% off task) in her ability to understand and remember detailed instructions, apply information to make simple decisions, sustain an ordinary routine without special supervision, interact appropriately with supervisors, and respond appropriately to work pressures and changes in a routine work setting; and (2) an extreme limitation (greater than 15% off task) in maintaining attention and concentration.  Tr. 496.  Without further explanation, Dr. Grove opined that these limitations would cause Plaintiff to be off task more than 30% of an eight-hour workday, less than 50% efficient compared to an average worker in a full-time job, unable to complete an eight-hour workday at least five days per month, and absent from work at least five days per month.  Tr. 497.  Dr. Grove rendered the very same opinion, based on similar functional limitations, in the 2016, 2018, and 2020 forms.  Tr. 621-22, 878-79, 1876-77; *see also* Tr. 31-33.

Dr. Groves indicated in the 2016 form that Plaintiff had: (1) marked limitations in understanding and remembering detailed instructions and interacting with coworkers, supervisors, and the public; and (2) an extreme limitation in making judgments on simple work-related decisions.  Tr. 621.  The ALJ found Dr. Gove's 2016 opinion to be inconsistent with his treatment notes.  Tr. 31.  A treatment note just prior to the 2016 opinion states that Plaintiff was unable to work due to back pain, but makes no mention of an inability to work due to mental health impairments.  *Id.* (citing Ex. 5F/2, Tr. 705)).  And the treatment note following the 2016 opinion states that Plaintiff was only "somewhat depressed" due to physical impairments and family- and financial-related stressors.  *Id.*  The treatment plan was for Plaintiff to continue on her current medications and to follow-up with Dr. Grove in two months.  *Id.*  The ALJ reasonably concluded that "[t]his is not what one would expect to see with a claimant who has [the] opined marked and extreme mental limitations."  *Id.*

The ALJ also found the 2016 opinion to be inconsistent with the greater record showing that Plaintiff has only moderate limitations.  *Id.*  The ALJ provided the following examples of Plaintiff's activities and ability to interact well with others:

7

> [T]he claimant is able to perform simple household tasks, prepare simple meals, pay bills, go to doctor's appointments, take medications, shop online, drive short distances, take painting classes, and watch television. In addition, she is able to provide information about her health and describe prior work history. Further, the claimant is able to generally get along with others, spend time with family, and live with others. Moreover, she interacted appropriately at two hearings, and she was described as pleasant and cooperative by providers.

Tr. 31-32; *see also* Tr. 24 (discussing Plaintiff's daily activities between March 2016 and November 2019).

Dr. Groves indicated in the 2018 form that while Plaintiff had no extreme limitations, she had marked limitations in maintaining attention and concentration for two hours and responding appropriately to work pressures. Tr. 878. Dr. Groves again opined that that Plaintiff would be absent from work at least five days per month. Tr. 879. The ALJ found this opinion to be more consistent with the greater record than the 2016 opinion, but concluded that the marked limitations continue to be unsupported by Dr. Grove's treatment notes. Tr. 32. The treatment note from the same day as the 2018 opinion indicated that Plaintiff's mood had been fairly stable. *Id.* (citing Ex. 28F/2, Tr. 1190). Other treatment notes showed that Plaintiff's exacerbation of symptoms appeared to be situational, including stress related to her children, loneliness, and financial problems. *Id.*; *see* Tr. 29, 1192-97. The ALJ noted that Plaintiff was able to complete testing that assesses concentration and attention, and that her activities also included caring for children and pets, managing funds, and handling her medical care. Tr. 32. The ALJ reasonably found Plaintiff's abilities and activities to be inconsistent with the marked functional limitations and extreme attendance limits proposed by Dr. Grove. *Id.*; *see* Tr. 878-79.

Dr. Groves indicated in the 2020 form that Plaintiff had: (1) marked limitations in carrying out simple instructions, maintaining concentration and attention for one hour, performing scheduled activities, sustaining an ordinary routine, and interacting with the public and coworkers; and (2) extreme limitations in understanding and remembering detailed instructions, applying information to make simple judgments, maintaining

attention and concentration for two hours, and interacting with supervisors. Tr. 1876. Once again, the ALJ gave little weight to Dr. Grove's opinion because it is not supported by his treatment notes nor consistent with the greater record, which shows that Plaintiff has no more than moderate limitations from her mental health impairments. Tr. 33; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations.").

The ALJ also noted that Dr. Groves "merely checked boxes on a form, and did not provide any written explanation for his answers." Tr. 33. Contrary to Plaintiff's assertion (Doc. 16 at 21), the ALJ did not err by relying in part on the lack of an explanation. *See* 20 C.F.R. § 404.1527(b)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (cleaned up); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that the ALJ did not err in giving little weight to an opinion that was "conclusionary in the form of a check-list" because an ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole") (cleaned up); *Torrecillas v. Comm'r of Soc. Sec.*, No. 1:21-CV-01703-SAB, 2023 WL 1420566, at *10 (E.D. Cal. Jan. 31, 2023) ("The Ninth Circuit has made clear that an ALJ may discount an unexplained check-the-box form opinion that does not contain any explanation of the basis of its conclusions, or that is unsupported or inconsistent with the treatment records from that medical provider.") (citing *Ford*, 950 F.3d at 1155).

The ALJ thoroughly discussed Dr. Grove's treatment records and found that Plaintiff's mental health impairments generally were well-controlled with medications and her mental state examinations were within normal limits. Tr. 28-29 (citing Ex. 5F/2-4,

Tr. 705-07; Ex. 11/F2, Tr. 797; Ex. 28F/1-3, Tr. 1189-91).  The ALJ provided specific and legitimate reasons for rejecting Dr. Grove's marked and extreme limitations in his 2016, 2018, and 2020 opinions, and because those valid reasons apply equally to his 2017 opinion, the ALJ's failure to discuss that opinion was harmless.  *See Molina*, 674 F.3d at 1115 (an ALJ's error is harmless if the court can "conclude from the record that the ALJ would have reached the same result absent the error"); *Hurn v. Saul*, 798 F. App'x 976, 978 (9th Cir. 2019) ("The ALJ's failure to evaluate Dr. Cunningham's 2012 report was harmless error because the ALJ reviewed [his] 2014 report, the two reports were substantially the same, and the ALJ's reasoning would apply equally to both reports.") (citing *Molina*, 674 F.3d at 1115); *Brian M. v. Comm'r of Soc. Sec.*, No. C20-5482-MLP, 2021 WL 1222659, at *3 n.4 (W.D. Wash. Apr. 1, 2021) (agreeing with the Commissioner that "any error was at most harmless because the [treating physician's] other opinions were repetitive of the opinions the ALJ did discuss, such that the reasons provided by the ALJ to discount the May 2018, July 2018, and December 2018 forms apply equally to the forms not discussed").  And contrary to Plaintiff's suggestion (Doc. 16 at 19-21), the ALJ's decision to afford little weight to Dr. Grove's opinions easily "clear[s] the low substantial evidence bar."  *Ford*, 950 F.3d at 1159; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that the "substantial evidence" threshold "is not high"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Ultimately, the evidence on [the] issue [of improvement with treatment] points in either direction.  Because substantial evidence is a relatively low evidentiary threshold and highly deferential, *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009), the ALJ's interpretation of the evidence was reasonable.").

Plaintiff contends the ALJ impermissibly provided her own medical opinions in giving little weight to Dr. Grove's opinions and determining Plaintiff's RFC.  Doc. 16

at 20. But it is "the responsibility of the ALJ, not the claimant's physician, to determine [RFC]." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "That determination is made 'based on all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and in doing so the ALJ must 'evaluate the persuasiveness of medical opinions,' 20 C.F.R. § 404.1520c(a)[.]" *Tansy v. Comm'r of Soc. Sec. Admin.*, No. CV-21-1873-PHX-SMB (JFM), 2022 WL 16752321, at *9 (D. Ariz. Sept. 22, 2022). That is what the ALJ did here, in concluding that Dr. Grove's opinions were unsupported by his treatment notes and inconsistent with the greater record and Plaintiff's activities. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (rejecting the argument that the ALJ attempted to "play doctor" because "it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole," and the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC"); *Lopez v. Saul*, No. 1:19-CV-00971-BAM, 2020 WL 6526197, at *8 (E.D. Cal. Nov. 5, 2020) ("Plaintiff's additional argument that the ALJ 'played doctor' by interpreting the medical evidence . . . is likewise without merit. Contrary to Plaintiff's contention, it is within the ALJ's province to synthesize the medical evidence.") (cleaned up).

Plaintiff notes that the ALJ did not find that she spent a substantial part of a typical day doing activities that are consistent with the ability to work. Doc. 16 at 21-22. True, but an ALJ need not find that a claimant's daily activities show an ability to work in order to discount a medical opinion that the claimant has marked and extreme functional limitations. *See Nazarian v. Berryhill*, No. CV 17-1114 JC, 2018 WL 2938581, at *7 (C.D. Cal. June 7, 2018) ("[E]ven where a claimant's activities suggest some difficulty in functioning, an ALJ may give less weight to subjective complaints to the extent a claimant's apparent actual level of activity is inconsistent with the extent of [alleged] functional limitation[s].") (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Although evidence of Plaintiff's daily activities may also admit of an interpretation more favorable to her (*see* Doc. 16 at 22), "the ALJ's interpretation was rational, and [the Court]

'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (quoting *Magallanes*, 881 F.2d at 750); *see Thomas*, 278 F.3d at 954 (same).

**C.     Dr. Yoches.**

Dr. Yoches reviewed Plaintiff's medical history and examined her on March 26, 2017. Tr. 755-59. Plaintiff performed well during the mental status exam, which Dr. Yoches summarized as follows:

> [Ms. Venezia] was cooperative throughout the evaluation. Her speech was within normal limits. Ms. Venezia's mood was euthymic (normal); although, she briefly became tearful . . . when she spoke of her financial troubles. Ms. Venezia was alert and oriented on all spheres. Her thought processes were linear, logical, and goal directed. She did not appear to have problems with comprehension. She did not exhibit any significant problems with attention or concentration. During the interview her memory appeared to be intact as she recalled significant information related to her psychosocial history. Her insight and judgment appear good. Ms. Venezia did not express any unrealistic ideas or bizarre beliefs. She denied currently experiencing auditory or visual hallucinations. She did not appear to be responding to internal stimuli.

Tr. 758. Plaintiff also scored 27/30 (90%) on the mini-mental status exam. Tr. 758-59.

Dr. Yoches opined that Plaintiff had no limitations in understanding and remembering simple instructions and adapting to changes in a work setting. Tr. 761. And although Plaintiff did not present with any significant impairments in social functioning or adaptability, Dr. Yoches opined that she would have difficulties "consistently interacting with co-workers and supervisors" and "maintaining attention and concentration for extended periods of time" given her mental health history and symptoms. *Id.*

The ALJ gave some weight to Dr. Yoches's opinion, noting that she had personally examined Plaintiff and supported her opinion with findings from the examination. Tr. 30. The ALJ further explained, however, that some limitations relating to memory and adapting to change were warranted given the reports of Plaintiff's memory problems and incidents during her inpatient treatment in February 2018. *Id.*; *see* Tr. 29, 1217-18.

Plaintiff contends that the ALJ failed to reconcile her RFC determination with Dr. Yoches's opinion that Plaintiff would have difficulties consistently interacting with coworkers and supervisors and maintaining attention and concentration for extended periods of time. Doc. 16 at 17-18. But the ALJ specifically "accounted for [Plaintiff's] mental health impairments in the limitation to simple, routine tasks, and in limiting [her] to making simple work-related decisions and having occasional interaction with coworkers and the public." Tr. 29. Plaintiff does not explain how these significant limitations conflict with Dr. Yoches's opinion. *See* Docs. 16 at 18, 19 at 6.[8] Indeed, Dr. Yoches herself found that Plaintiff had the ability to remember and carry out simple instructions and work-like procedures. Tr. 761.

Plaintiff asserts that the ALJ "did not reject any portion of Dr. Yoches's assessment[.]" Doc. 16 at 17. But as Plaintiff acknowledges, the ALJ gave the assessment only "some weight." *Id.* (citing Tr. 30). In determining Plaintiff's mental RFC, the ALJ did not wholly adopt a single medical source opinion and instead assessed specific limitations on a function-by-function basis best supported by the evidence as a whole. Tr. 29; *see also* Tr. at 36. The ALJ also gave some weight to the opinions two non-examining physicians that Plaintiff could perform simple work because the opinions are supported by the records the physicians reviewed and are generally consistent with the greater record. Tr. 30; *see* Tr. 124-42, 145-67. The ALJ also found, however, that the proposed limitation to no interaction with minors was not sufficient because "greater limitations on interaction with coworkers and the general public are warranted" given Plaintiff's "moderate impairment in interacting with all people[.]" Tr. 30; *see* Tr. 139, 163. Plaintiff does not challenge the ALJ's partial reliance on the non-examining physicians' opinions, which was entirely proper. *See Thomas*, 278 F.3d at 957 (opinions of non-examining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *Lester*, 81 F.3d at 831

---

[8] Plaintiff cites no legal authority for the proposition that "extended periods of time" equates to "the course of the entire workday." Doc. 16 at 18.

(this Circuit has "upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor"); *Brown v. Kijakazi*, No. CV 22-140-M-DLC, 2023 WL 2889405, at *7 (D. Mont. Apr. 11, 2023) ("[I]n reaching an RFC determination, an ALJ may also rely on the opinion of a non-examining physician, so long as that opinion is supported by evidence in the record.") (citing *Lester*, 81 F.3d at 831); *Ginger R. v. Kijakazi*, No. 20-CV-02524-JLS-JLB, 2022 WL 2713352, at *6 (S.D. Cal. July 13, 2022), ("The objective medical evidence of record coupled with the opinions of the non-examining state agency consulting physicians constitute substantial evidence supporting the ALJ's RFC determination.") (citing *Thomas*, 278 F.3d at 957).

### D.     Dr. Yeung.

Dr. Yeung performed lumbar surgery on Plaintiff in 2016 and served as a pain management provider. Doc. 16 at 3, 22-23. On March 9, 2017, he completed a check-box form regarding Plaintiff's functional limitations. Tr. 791-94. He opined that Plaintiff had multiple extreme limitations, including an inability to sit for more than 15 minutes or stand and walk more than two hours in an eight-hour workday. Tr. 792. The ALJ gave this opinion little weight. Tr. 34. Plaintiff contends that the ALJ erred in this regard. Doc. 16 at 22-23. The Court does not agree.

The ALJ found that Dr. Yeung's treatment notes do not support the extreme limitations he proposed. Tr. 35. The ALJ referenced a treatment note showing that Plaintiff had only mild muscle spasms, negative straight leg raises, mostly intact sensations, minimally decreased strength in the lower extremities, and full weight bearing gait without the need for an assistive device. *Id.* (citing Ex. 13F/4-5, Tr. 810-11). The ALJ further explained that Dr. Yeung's records provide no basis for Plaintiff's alleged inability to sit more than 15 minutes total in an eight-hour period, and contain nothing to explain decreased manipulation activities, environmental limitations, or time off task. *Id.* The ALJ also noted that Dr. Yeung merely checked boxes on a form with minimal explanation. *Id.*[9]

---

[9] Dr. Yeung stated only that Plaintiff will need additional back surgeries every 5-10

The ALJ provided an additional reason for giving Dr. Yeung's opinion little weight, which Plaintiff fails to address. Dr. Yeung indicated that Plaintiff could occasionally climb, but could rarely stoop, squat or crawl and was unable to use her feet for repetitive movements. Tr. 791-93. The ALJ found these limitations to be inconsistent because climbing requires the repetitive use of the feet, and the strength and mobility required to climb is greater than that required to stoop, squat, and crawl. Tr. 35. Dr. Yeung also indicated that Plaintiff could rarely reach, but could occasionally push and pull controls, which would encompass the act of reaching. *Id.*; *see* Tr. 791-92.

"The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating physicians] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (citations omitted). The ALJ reasonably determined that the discrepancies in Dr. Yeung's opinion "raise the question of whether [he] understood the terms defined for purposes of Social Security disability programs." Tr. 35.

Plaintiff has failed to show that the ALJ erred in giving little weight to Dr. Yeung's 2017 opinion. *See Hernandez v. Colvin*, No. CV 13-2525-JPR, 2014 WL 1800408, at *9 (C.D. Cal. May 6, 2014) ("The ALJ was . . . entitled to accord 'very little weight' to [the physician's] RFC Questionnaire because it was a mere check-off report, was internally inconsistent, and did not explain the bases for her conclusions.").

Dr. Yeung completed another functional limitations form on January 9, 2018. Tr. 1209-10. He opined that Plaintiff: (1) could sit less than one hour and stand and walk less than 30 minutes in an eight-hour workday; (2) could sit, stand, and walk less than 30 minutes at a time; (3) needed to change positions more than once every 15 minutes; (4) had moderate restrictions in squatting and climbing, and severe restrictions in bending, crawling, stooping, and twisting; and (5) could occasionally lift up to 10 pounds and never lift 51-100 pounds. *Id.*

---

years and her condition is expected to progress if she continues to work. Tr. 794.

The ALJ explained that this opinion also contains several inconsistencies:

> Dr. Yeung . . . indicated that the claimant has moderate limitations in crouching – an act that is required to sit. It is difficult to reconcile the opinion that the claimant has moderate limitations in crouching, yet also would need to do so more than once every 15 minutes. Additionally, Dr. Yeung indicated that the claimant can never and also occasionally lift up to 50 pounds. This appears in part due to a flaw in the formatting of the check-the box opinion, which tends to decrease the probative value of the form. The form itself also fails to define the terms 'mild,' 'moderate,' and 'severe' with regard to limitations, and these terms are not defined in the Social Security Act, corresponding regulations, or other agency guidance. Dr. Yeung provided no further insight to decipher what he intended by those limitations.

Tr. 35 (citations omitted). Plaintiff fails to address the clear inconsistencies in Dr. Yeung's opinion, which provide a valid reason for the ALJ to give the opinion little weight. *See Donna J. v. Comm'r of Soc. Sec.*, No. 3:18-CV-05296-TLF, 2020 WL 949903, at *2 (W.D. Wash. Feb. 27, 2020) (explaining that "an internal inconsistency can serve as a specific and legitimate reason for discounting a physician's opinion") (citing *Morgan*, 169 F.3d at 603; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)); *Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *11 (E.D. Cal. July 8, 2014) (finding that the ALJ did not err in giving little weight to a treating physician's opinion because "it was internally inconsistent with the record [and] completed largely on a check box form with very little explanation").[10]

### E. Dr. Eller.

Dr. Eller completed an assessment of Plaintiff's work-related abilities on June 8, 2018. Tr. 880-82. She opined that Plaintiff had several extreme limitations, including the inability to sit more than 20 minutes at a time, stand and walk more than 15 minutes at a time, and sit, stand, and walk more than two hours each in an eight-hour workday. Tr. 880.

---

[10] Dr. Yeung also opined that Plaintiff has severe limits in concentration, interpersonal relationships, and ability to cope with stress. Tr. 1210. The ALJ found this opinion to be unsupported because "there are no cognitive findings in Dr. Yeung's notes to support his opinion with regard to mental limitations." Tr. 31. Plaintiff does not challenge this finding by the ALJ, nor has she identified any cognitive findings in Dr. Yeung's records that would support severe mental limitations. *See* Doc. 16 at 9-10, 13, 22-23; Doc. 19 at 7-8.

16

Dr. Eller further opined that Plaintiff could only occasionally lift and carry up to 10 pounds, rarely stoop, squat, crawl, climb, and reach, and rarely engage in fine manipulation. Tr. 880-81.

The ALJ gave Dr. Eller's opinion little weight because it is not supported by her treatment notes, including a physical examination of Plaintiff on the date of the opinion, which was normal. Tr. 34 (citing Ex. 25F/18, Tr. 999). The referenced treatment note indicates that while Plaintiff was positive for myalgias, she was well-developed, had normal range of motion, muscle tone, and reflexes, and exhibited no edema, tenderness, or muscular deformities. Tr. 999, 1002. The ALJ further found that Dr. Eller's opinion "is not consistent with the greater record, which shows that [Plaintiff] is able to travel to Virginia to visit her mother, attends painting classes, and was able to chaperone a school field trip – all activities that require exertional, postural, and manipulation abilities." Tr. 34; *see also* Tr. 24 (discussing Plaintiff's activities, including visiting her mother in September 2018 and doing handyman work in August 2018).

Plaintiff asserts that the ALJ improperly relied on her activities which do not demonstrate an ability to work a full eight-hour day. Doc. 16 at 21-22, 24. But the ALJ did not conclude that Plaintiff's activities show an ability to work. Instead, the ALJ found that the activities are not consistent with the extreme limitations identified by Dr. Eller. Tr. 34. The Court cannot conclude that the ALJ's reasoning on this point is irrational. *See Lisa L.*, 2021 WL 3663068, at *8 (the plaintiff's activities were a permissible reason to reject the treating physician's "extreme restrictions"); *Jones v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01193-PHX-SPL, 2021 WL 5504557, at *3 (D. Ariz. Sept. 22, 2021) (the ALJ did not err in giving little weight to a doctor's "extreme opinion" where it "was at odds with Plaintiff's activities"); *Kimberly O. v. Saul*, No. 1:20-CV-03042-FVS, 2021 WL 5240496, at *5 (E.D. Wash. June 2, 2021) (the ALJ properly found that "the severe limitations assessed by Dr. Tompkins were inconsistent with Plaintiff's reported activities of daily living and work activities") (citing *Morgan*, 169 F.3d at 601-02); *Zoran S. v. Berryhill*, No. 18-CV-07672-JSC, 2020 WL 7405737, at *4 (N.D. Cal. Dec. 17, 2020) (the

ALJ "did not err in finding Dr. Jarczewski's opinion of Plaintiff's extreme limitations inconsistent with Plaintiff's activities of daily living because an ALJ may discount a physician's opinion where it is inconsistent with a claimant's level of activity") (citing *Ghanam v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)); *Aliza W. v. Saul*, No. CV 20-09189-JEM, 2021 WL 3190902, at *5 (C.D. Cal. July 28, 2021) (noting that an ALJ properly may reject extreme limitations that are not consistent with the claimant's daily functioning) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  Because the "conflict between [Dr. Eller's] opinion and [Plaintiff's] activity level is a specific and legitimate reason for rejecting the opinion," the ALJ did not err in this regard.  *Ford*, 950 F.3d at 1155.

Plaintiff notes that Dr. Eller observed findings consistent with her assessed limitations.  Doc. 16 at 24.  But as discussed, the ALJ's conclusion must be upheld where a rational interpretation of the evidence supports the ALJ's decision.  *Thomas*, 278 F.3d at 954.  Plaintiff essentially asks the Court to second-guess the ALJ's rational conclusion.  The Court declines to do so.  *See Jaime v. Kijakazi*, No. 1:21-CV-01672-SKO, 2023 WL 2466196, at *11 (E.D. Cal. Mar. 10, 2023) ("While Plaintiff may disagree with the ALJ's interpretation of the medical evidence, it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff.") (citing *Rollins*, 261 F.3d at 857); *Flaherty v. Colvin*, No. CV 12-10496-JEM, 2013 WL 3817099, at *4 (C.D. Cal. July 23, 2013) ("Where the ALJ's interpretation of the medical evidence is reasonable[,] as it is here, it should not be second-guessed."); *Stratton v. Astrue*, No. C07-5555RBL, 2008 WL 2262025, at *3 (W.D. Wash. May 30, 2008) ("Plaintiff argues for a more favorable interpretation of the medical evidence.  However, the ALJ's interpretation was reasonable and properly supported. 'When the evidence before the ALJ is subject to more than one rational interpretation, the court must defer to the ALJ's conclusion.'") (quoting *Batson*, 359 F.3d at 1190).

**V. Conclusion.**

Having carefully reviewed the ALJ's decision and the record as a whole, the Court finds that the decision is supported by substantial evidence and not based on harmful legal error. The decision therefore will be affirmed.[11]

**IT IS ORDERED:**

1. The final decision of the Commissioner of Social Security to partially deny Plaintiff's claim for disability insurance benefits (Tr. 1-6, 10-50) is **affirmed**.

2. The Clerk of Court shall enter judgment accordingly.

Dated this 1st day of May, 2023.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

---

[11] Given this ruling, the Court need not address the parties' arguments regarding the purpose of any remand. *See* Docs. 16 at 25, 18 at 12-14.

19